We'll hear first from Mr. Goode. You may proceed. Good morning, Your Honors. May it please the Court. John Goode, certified law student under the supervision of Andrew Knapp and Southwestern Law School's Appellate Litigation Clinic, on behalf of Today, I will discuss issues related to Petitioner's asylum, withholding of removal, cancellation of removal, and NACARA claims. I will monitor my time and intend to reserve about seven minutes of rebuttal for my colleague Lisa Au. Your Honors, this Court should remand Petitioner's claims for three reasons. One, the BIA reviewed the agency's adverse credibility determination under the wrong standard. Two, Petitioner sufficiently exhausted his TRIG and CIMT arguments. And three, the IJ and the BIA undermined the USCIS's already positive ABC registration. Moving to my first point, the BIA reviewed the agency's adverse credibility determination under an improper standard. The Code of Federal Regulations requires that when the BIA is reviewing an agency's adverse credibility determination, it must review under a clear error standard. And in this case, the BIA reviewed under Wang versus INS, a single factor rule that is reserved exclusively for this Court. And this Court recognized as much in Zeng versus Garland in 2021, where in that case, when the BIA applied Wang instead of the clear error standard, this Court recognized that that constituted reversible error. The government does not dispute that the wrong standard applied, but instead contests that under the substantial evidence standard, that there is enough evidence to uphold the agency's adverse credibility determination. However, Petitioner points to three different errors that were committed by the IJ and the BIA in violation of the rule pronounced in Soto Oluarte versus Holder. And because of those three errors, substantial evidence could not support upholding the adverse credibility determination. If I may move to my second point regarding Petitioner exhausting his TRIG and CIMT arguments, the government only puts at issue whether or not that these arguments were exhausted, and Petitioner believes that they certainly were. But Petitioner would also like to remind this Court, with respect to the TRIG argument and with respect to the CIMT argument, at least one argument needs to be exhausted to warrant remand. It wouldn't require both. So if I could first turn to the TRIG arguments that Petitioner raised, Petitioner raises the common law defense of diminished capacity and culpability of minors. And this Circuit recognized in Bair versus Barr that exhaustion is satisfied when a Petitioner raises an argument in administrative proceedings and then raises a more specific legal issue on appeal. That's exactly what Petitioner did in this case. He first raised his lack of knowledge defense before the IJ on the administrative record at page 405, and his attorney argued that the IJ should consider, should take into account Petitioner's age of being about 13 years old at that time. Doesn't the record also reflect that the IJ was well aware of the age because the age is mentioned at other points? And so then this becomes an argument that the IJ had to say it specifically and ticking it through as a factor. And why would that be true? The IJ was clearly aware of it and we can then presume considered it in making the ultimate determination. Well, the IJ and the BIA, both of them rejected the lack of knowledge defense by solely relying on the admission that Petitioner knew that he was involved with and contemplated his actual age that a typical common law defense of diminished capacity for minors would require for courts to consider. And so to be clear, assuming that Petitioner, or because Petitioner has exhausted this argument, what we're asking for this court to do is to join the Sixth Circuit in recognizing that the common law defense of diminished capacity and this become a situation where you don't have to mention an argument specifically, but the IJ does have to address the argument specifically. It seems, am I missing something? No, Your Honor. That is not the case. The whole purpose of exhaustion is that the BIA is on notice and the BIA is also supposed to read Petitioner's argument within the context of the record. And when reading Petitioner's argument, his lack of knowledge defense within the context of the record, it's clear what was central to his lack of knowledge defense was the fact that he was about 13 to 15 years old at the time that he was involved with these terrorist organizations. If I may move to the how the CIMT arguments were also sufficiently exhausted, I would first like to point to the argument that Petitioner asserts, challenging whether or not 647A is or is not a CIMT. In this case, Petitioner argued that he had good moral character and the BIA responded. That respondent has not meaningfully challenged that finding that his convictions are CIMT's, but rather inaccurately characterizes the IJ's decision as ruling that he lacked good moral character. So notwithstanding that Petitioner failed to reasonably, the BIA understood what the Petitioner was trying to argue and thus had notice of what Petitioner was arguing, but then the BIA went further. The BIA addressed the substantive merits of the claim by using this court's decision in Batanzos versus Barr to resurrect its 1967 decision in Alfonso Bermudez to conclude that 647A were CIMT's. Why don't you tell me why Alfonso Bermudez through Batanzos doesn't apply retroactively to your client? Certainly, Your Honor. So under a retroactive application, this court is supposed to weigh the Montgomery factors. In particular, the factors that are at issue is the reliance factor. And so Petitioner asserts that at the time that he filed his notice of appeal in 2018, Nunez versus Holder was still good law. And Nunez versus Holder, decided by this court in 2010, held that 647A was not a CIMT. And so, and this court departed from Nunez when it decided Batanzos, which effectively resurrected Alfonso Bermudez. So essentially, that demonstrates, one, that Petitioner relied on Nunez versus Holder, but then also, two, that this circuit unreasonably departed from its past precedent. So is it just the act of having filed the appeal, paid the filing fee, is it your argument that that's sufficient to show reliance? Yes, Your Honor. And if there are no further questions regarding the CIMT or Trigg arguments, I'd like to reserve the rest of my time for rebuttal. All right. Thank you, counsel. Then we'll hear from Ms. Hennis. Did I pronounce that correctly? All right. May it please the Court, Stephanie Hennis for Respondent. Your Honors, in this case, there are a variety of ways that the court can dispose of the petition for asylum. One would be regarding the CIMT determination. One would be regarding the Trigg, the terrorist-related removal grounds. And then also, even if the court were to determine that neither of those were valid, at least as to asylum and withholding, the adverse credibility finding would be dispositive of that claim. So I want to, let me, let me begin with the adverse credibility finding. The respondent pushes back on the notion that the board applied the wrong standard when it was reviewing the adverse credibility finding in this case. The board did cite Wang, but Wang is a case that talks about the heart of the claim rule. And the reason that the board was discussing the heart of the claim rule was because in his counseled appeal brief to the board, the petitioner said that the immigration judge had not utilized the heart of the claim rule, which is required for a pre-Real ID Act case like his. So when the board cited that case, it was merely pointing out that the immigration judge applied the heart of the claim, so did the board. And even if there was any question, the board didn't step back from any aspect of the immigration judge's decision in this case. The board laid out the various reasons why the immigration judge found the petitioner not credible, and then agreed with them. So there isn't, there isn't any question here about reviewing for clear error. The, I would also point out that the inconsistencies, especially regarding what terrorist groups the is all over the place. In his asylum interview, he testified that he was a member of two armed guerrilla groups called ORPA and EGP. He was then issued a notice of intent to deny, and in his response, he said he never told the asylum officer that he was a member of ORPA or EGP. Then he gets to immigration court on, in October 2012. He again denied membership in either group. Later, in June of the following year, when the asylum officer comes and testifies about the petitioner's testimony, he, and, and clarifies that he did make these statements. Then the petitioner starts to backtrack. Then in May 2017, he was only an EGP member, and that was only for, oh, excuse me, I, I, yes, I, let me follow my chronology here. So, then he was an, only an EGP member, only for one year, and then he later talks about how he was only a member of one group, and then he was a member of two groups, and the immigration judge asked him about that, and he said all those groups were only one. Now, the petitioner says that the immigration judge needed to say more about rejecting that explanation, but the doesn't make any sense. He had previously testified that there were multiple groups and that he was part of multiple groups. He can't then say, no, there weren't multiple groups, there was actually just one. And, and looking at the, I think your chronology is helpful, and, and that discussion about the, the record that's developed and the inconsistencies certainly highlights some issues with respect to credibility. Does, does the IJ spend enough time working through those? A lot of the IJ's comments on adverse credibility are somewhat conclusory. Well, so the, all the immigration judge needs to do is give specific and cogent reasons for finding the person not credible, and the immigration judge does walk through the various versions of testimony that the petitioner provided. The immigration judge did not give a reason for rejecting the explanation, but again, that, a longer explanation only needs to occur when the person gives a reasonable and plausible explanation. And given that he had previously testified on numerous occasions that he was a member of multiple groups, to then say that they were just one group, it's, it's not the government's position. It's just that that's not reasonable or plausible. He also testified inconsistently about his involvement with the two organizations, going from saying that he was trained to make bombs and he recruited people, to he never learned how to do any of those things, to denying that he placed any of these devices anywhere, and then ultimately conceding that he did, in fact, place, he did place explosive devices around Guatemala City at bus stations and at military bases. So we have that testimony as well, and all of that goes to the heart of his claim. His claim for asylum was based on his involvement with these groups being the reason that he was harmed and would fear harm. There's also a precedent from the Seventh Amendment involvement with terrorist groups in a Third Circuit case that we cited in our brief that says that inconsistent statements about the applicability of the terrorism bar go to the heart of the claim. I would also, I guess, I would also point out that they make arguments about this court's recent precedent and alarm regarding the totality of the circumstances analysis for asylum for adverse credibility claims, and that doesn't apply in this case because Alam was interpreting the Real ID Act standards for adverse credibility, which have a totality of the circumstances requirement. There is no totality of the circumstances requirement for pre-Real ID Act cases like his. As to the crime involving moral turpitude conclusion in this case... Before you transition off of the adverse credibility piece, could you speak a little bit about how that pertains to the Nicara claim? So it applies, it does apply to the Nicara claim to the extent that the immigration judge was looking at the petitioner's lack of credibility in Nicara benefits. There was testimony during the immigration court hearing from the DHS attorney explaining that USCIS had accepted him as a class member and had also accepted a sworn statement from him that he had timely registered for ABC benefits, which is what's required to be able to get, to be considered for Nicara. But there was no objective evidence and from USCIS, the petitioner's counsel had submitted a letter from the asylum office saying that they had no, that they had no evidence in their database of him timely registering. And so the immigration judge said, well, you're not credible and you don't have any objective evidence of registration. And so I, he determined that he didn't timely register for benefits. Now, I will point out, your honors, that the question of timely registration is one as to eligibility for Nicara and Congress has expressly said that that is not subject to judicial review. This court has also reached that conclusion in published decisions. The claim that the petitioners, the petitioner attempts to raise now is that there is a legal issue regarding the immigration judges and the board's ability to even consider someone's eligibility for Nicara regarding the registration and that they're never, basically never allowed to do it. And they, they refer to matter of morales, which is a board case that doesn't deal with this particular issue. It didn't address Nicara cancellation at all because the board decision predated that form of relief. It only addressed the IJ and board's role in administering the ABC settlement. Nicara is not part of the ABC settlement. And it answered the narrow question of what determinations the IJ needed to make before administratively closing removal proceedings in order for the person to get the de novo outside of removal proceedings adjudication of an asylum application that the settlement agreement provided. So thank you for that explanation. Turning to the CIMT issue, does the fate of Chevron, is that material to what we do with this report? No, it's not. So for a few reasons. One, that's speculative, that it's going to get overruled. Two, Chevron is about the implicit delegation of authority to an agency. That's, that's acknowledged in the Roberts dissent in Arlington v. FCC. And then the reason that this question of implicit delegation is important here is that the INA actually contains an express delegation of authority. 8 U.S.C. 1103 A.1 says that determinations in ruling by the Attorney General with respect to all questions of law arising from the administration and enforcement of the INA and all other laws relating to immigration and naturalization of non-citizens shall be controlling. Well, I guess that's part of the challenge. But there are substantial arguments. We didn't accept them, that the CIMT definition itself is vague, maybe not unconstitutionally so. And it looks like some of our past opinions have relied on that ambiguity to allow the agency to fill that. Given the stakes at issue here, why wouldn't we, if Chevron falls away, want to take another look at exercise our Article 3 powers to determine what moral turpitude means? I think because moral turpitude is, I mean, this is still the, a crime involving moral turpitude is part of the INA and the statute does provide the, does provide the, the Attorney General with the ability to rule on those issues. So I, I would say that it's still the statute that requires the... What does our prior case authority say about whether 657 is the CIMT, if anything? Your, the, this court's precedent regarding that particular statute of conviction? Correct. Do we have any pertinent precedent on that? I'm not, I'm not aware of any, Your Honor. I would, I, this is, I think, a decent segue into the exhaustion argument that I do want to quickly make. I, I recognize that the, the court has liberal exhaustion policies, but in this case, one, the, this is not a situation where the petitioner was pro se. He did have an attorney when he filed his appeal brief to the board. And in his appeal brief, through counsel, he only argued that his convictions didn't prevent him from showing good moral character. The board even acknowledged this waiver and really couched its determination in the case on the absence of any argument from the petitioner. And that's what we think distinguishes this from other cases. This is not like Abebe v. Gonzalez, where the, the board adopted and affirmed NIJ's, quote, thorough and well-reasoned decision. In this case, we actually have the board saying, well, there's this published precedent that we have. You're not telling us why we shouldn't follow this. You haven't raised any argument whatsoever. And so, we would say that that's not an opportunity for the board to really be correcting its errors, especially since there was already a published board decision in place. I, I guess, I suppose the other side reads footnote two in that discussion as acknowledging that the issue was before them. So, why wouldn't we rely on the fact that we deem it exhausted because the BIA has addressed it one way or the other? I mean, that is the, the only argument I can really make is that the fact that the board really did acknowledge that there weren't arguments being made gave it the reason to say, we're going to follow this case. And I think the footnote just gets at the notion of them saying, this case is still valid because there's a new, there's new precedent from the Ninth Circuit. But we, if we deem that argument exhausted, do you address anywhere in your brief the argument that Patanzas has an impermissibly retroactive effect upon Contreras? Yes. I, I mentioned this in one of the, the response to the 28-J letter. It's the fact that the court has already found that a CIMT is not impermissibly vague. And we get at the fact that the, the, the board's underlying, I, I can't remember the name of the case, the board's decision in Alfonso. I've run out of time, Your Honor. Would you like me to continue? And I have a further question. The, the, the board's decision in Alfonso had, had remained in place before the agency. And that gets at the idea of, this is different than what the court was dealing with in Patanzas, where there wasn't prior law that, that was in place. In this case, we already had a published decision finding that 6, CPC 647A was a CIMT. And so the petitioner was on notice that the approach that he was, that the Ninth Circuit has taken was vulnerable. And there's also no reliance interest. A favorable rule wasn't in, a more favorable rule wasn't in place when he pleaded guilty. He also talks about generally filing his board appeal due to reliance on Nunez, but then he actually says nothing about Nunez in his board appeal. So even if simply filing the appeal were enough, there's no evidence here that he was actually relying on that. And again, Nunez wasn't well-settled precedent, given that there was, there was this prior board decision that directly dealt with his statute of conviction. I want to ask you a question about the terrorist activities statute. Do you agree, what's your response to their argument that the agency should have applied pre-1996 law on that issue? So, our position is that the pre-1996 law is only relevant to this question of dangerousness. It is true, it is in fact true that the Real ID Act and the Patriot Act both apply in this case because they apply retroactively. The issue is that the Real ID Act did not re-implement language that had omitted, that had removed the dangerousness consideration when dealing with a material support claim. I don't know if that. Is dangerousness an issue or not an issue that's required here? Well, this court said that dangerous, I think we're actually, this court has said that dangerousness is a required determination in CHEMA, though it did separate that out from the material support argument, or the material support determination. So in CHEMA, the court said that there needs to be a determination as to material support and one as to dangerousness. And I point that out for purposes of our exhaustion argument because the Petitioner has never, at any point, raised any sort of argument about there needing to be a dangerousness finding. And that is something that is separate and distinct from the material support. So it should not be subsumed into a general challenge regarding the material support claim. Okay. All right. Thank you, Counselor. We've taken you over your time. Thank you, Your Honors. We'll hear now rebuttal from Ms. Al. Good morning, Your Honors. And may it please the Court, Lisa Al, certified law student on behalf of Petitioner Carlos Contreras-Rivas. Your Honors, in response to the government's arguments, there are several issues I want to address. The first issue I want to address is that this court doesn't have jurisdiction to reach the NACARA claim. Pursuant to Section 1252A2C&D, this court may review questions of law and constitutional claims, including questions of law that involve undisputed facts. Here, it is undisputed that Petitioner was determined by USCIS to be an ABC registered class member. Thus, all that remains for this court to decide is the legal issue, which is simply this, that once USCIS makes a positive ABC registration determination, the IJ and the BIA lack the authority to interfere with that determination. I don't see the BIA here as having determined whether your client was a registered member. I see it as just having concluded that he presented no evidence. I mean, isn't there a difference? Isn't that just a factual finding? Your Honor, I would argue no, and the reason being is once a determination by USCIS is made, any subsequent determinations as to the petitioner's eligibility or ability to show the USCIS registration is a subsequent determination, and to the extent it interferes with what USCIS determines, the BIA did not have the adjudicated authority to do so. And so, Your Honors, the authority behind Petitioner's argument comes from the ABC Settlement Agreement, a paragraph 2, as affirmed by the BIA's en banc precedent decision in the matter of Morales in 1995. And so, Your Honors, this court not only has jurisdiction to review the merits of petitioner's claims, but we do ask that because the BIA interfered with the USCIS's positive determination, that this court relance the BIA requiring them to respect the positive determination that was made and consider petitioner's NACARA eligibility on the merits. Your Honors, that brings me to the second argument, and that is that 6478 is not a CIMT. Your Honors, this is premised particularly on the fact that the BIA's change in position by resurrecting Alfonso Bermudez was an unreasonable departure in the BIA's own professed standards for assessing moral turpitude. Excuse me, Your Honors. And, for example, in some of the 28J cases that we submitted before this court, the BIA in the Chu Yang Bong case specifically stated that Alfonso Bermudez failed to apply the categorical approach that is modernly applied today. So the fact that the BIA used Alfonso Bermudez as the basis for determining petitioner's convictions for CIMTs is evidence in itself that this was an unreasonable departure from the BIA's own professed standards. Additionally, Your Honors, the 6478 is a victimless crime, and it also doesn't require the requisite culpable conduct under the categorical approach. The BIA looks to the minimum elements necessary for a conviction, and it also looks to the least culpable conduct resulting in a conviction. Here, for 6478, that's merely someone engaging in consensual sexual conduct in the presence of the public where they reasonably should have known that somebody could have seen it, but not where they intended somebody to see it. And so, Your Honors, this really is based on a negligence standard, not based on intent. And so, because the BIA's resurrection of Alfonso Bermudez resulted in a change in position that was a substantial departure from the BIA's own professed standards, we ask this court to follow this court's holding in Flores v. Vasquez v. Garland in 2023 and reverse the BIA's decision that 6478 is a CIMT. Your Honors, that brings me to the third issue. The government has not contested Petitioner's retroactivity claim in its entirety, neither on the merits or whether Petitioner exhausted the issue. Accordingly, Your Honors, we ask this court to weigh the Montgomery Ward factors in favor of Petitioner and conclude that on remand, the BIA may not deem Petitioner's convictions crimes involving moral turpitude. Finally, Your Honor, I want to move on to the government's position with respect to the adverse credibility determination. The government has tried to argue that the BIA did, in fact, apply the clear error standard. However, Your Honor, the evidence in the BIA's record clearly indicates that the BIA relied on Wang v. INS. Specifically, the BIA states that they recognize any of Petitioner's inconsistencies once the heart of Petitioner's asylum claim regarding involvement with the organizations and then cited to Wang v. INS. And so, Your Honors, under this court's precedence, the very use of the incorrect standard alone warrants a remand. Why is that standard incorrect? It says under pre-real ID Act law, inconsistencies need to go to the heart of the claim to support an adverse credibility determination. What is wrong about that statement? What is wrong about the statement is that the BIA was relying on Wang, which is the single factor rule. So the application of the single factor rule versus the clear error standard is the argument Petitioner is making. Is there any reference to the single factor rule here? Not specifically the single factor rule. I mean, a case can have more than one proposition in it. And if they cite it for one proposition and say which one they're citing it for, that's what they cited it for. And the fact that it's tainted on some other ground, I don't see that there's any suggestion that's what they did. Your Honor, actually, this court in Umana Escobar versus Garland in 2020, just in 2023, reversed the BIA's decision where they said they were using the clear error standard in the determination of the nexus determination. However, even though there was quite a substantial evidence that the BIA had correctly applied the clear error standard to the analysis, the fact that the BIA cited to the wrong standard in making that determination was evidence alone that a remand was necessary for the BIA to apply the correct standard. In addition, Your Honor, to the extent there's any concern about the ambiguity of what standard was actually applied, then a remand would nevertheless be appropriate for the BIA for that to be ascertained what standard was actually being used. Finally, Your Honor, I do want to point out that the extent the government has relied on a rationale for the agency's decision, or has provided rationale for the agency's decision, this court shouldn't consider such arguments because their ex post facto rationale for the agency's decisions is not permissible. This court's only to consider the arguments put forth, accordingly, any arguments offered by the government with respect to why the BIA cited to Wang versus INS from their own rationale should not be considered by this court. Your Honors, I see that I am over time, so if there are no further questions, then Petitioner does rest on the briefs. Thank you, Counsel. The case just argued is submitted, and we thank both sides for their helpful arguments in this matter, and the Court will take a 10-minute recess before proceeding with the next case.
judges: COLLINS, THOMAS, JOHNSTONE